*In re* MARRIAGE OF JAMES STRIBLING, Petitioner and Counterrespondent-Appellee, and JOYCE STRIBLING, Respondent and Counterpetitioner-Appellant.

Third District    No. 80-221

Opinion filed May 19, 1981.

Jack L. Brooks, of Laird, Chickris & Brooks, of East Moline, for appellant.

Dennis A. DePorter, of Braud, Warner, Neppl & Westensee, of Rock Island, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Joyce Stribling appeals from an order adjudicating property rights, child custody and support, maintenance, and attorney fees following the dissolution of her marriage to James Stribling. The parties were married for 22 years and had three children. At the time of the hearing in December of 1979, their daughter Cheryl was 19, daughter Kelly was 18, and son Bradley was 16. Cheryl and Kelly both worked approximately 28-30 hours per week, and both attended Blackhawk College. Cheryl testified that she was in her second year at Blackhawk and that she planned to enroll at Augustana College in the fall of 1980 to study for a bachelor's degree in business administration, with her employer paying part of her tuition costs. Kelly testified that she was then enrolled in the first year of a two-year program in data processing. Brad was a junior in high school, had a part-time job, and stated that he intended to attend Blackhawk College when he graduated.

After the parties separated in the spring of 1979, the three children continued to live with the mother in the marital home. The two girls each contributed $15 per week to the mother who in turn provided them with room and board. The girls pay for their own clothes, tuition, books, and

transportation. Brad does not contribute any room and board but uses his income for savings and for his car expenses.

The wife is 41 years old and has worked part-time since the youngest child entered school. For the past six years, she has worked 30 hours per week in a newspaper circulation department in East Moline with net earnings of $90 weekly. The office is six blocks from her home and has only part-time positions available. The wife has attempted full time work with the paper, which would result in net income of $126 weekly but that requires travel to Moline where parking and other costs would be greater. Also, she testified that when she tried working full time, she had "problems" with her son not going to school. At that point in her testimony, the husband stipulated that it is reasonable for her to work only part-time in East Moline until the son finishes high school.

The wife testified that her living expenses are about $840 per month, including mortgage payments of $126 per month. The husband is employed as a process engineer at International Harvester Farmall Works with take-home pay of $292 per week. He testified that his monthly expenses amount to $932, including $325 a month for a two-bedroom apartment and $35 per week car payment. The parties have a total equity of about $40,000 in their jointly owned home. The wife kept the furniture that was in the marital home, while the husband purchased new furniture for $3500. Both parties testified to various savings accounts which the parties had divided. The husband said he took $6000 or $7000 from a business account, $3500 of which was used to pay business expenses. He realized about $1500 from the sale of two vehicles and a motorcycle. He stated that his wife took $8000 in cash and in addition wrote checks for $1700 on a joint account that was his. Also, he said that $5700 of the funds she took were from a profit-sharing plan of his previous employer upon which there would be due about $835 for income taxes. According to the wife's testimony, the parties had $8100 in joint accounts at the time of separation. She said that the husband took $6300 "from another account"; that at the time of trial, she has $5700 in a savings account; and that her $1700 withdrawal from the husband's account included $700 for a new refrigerator which he told her to go ahead and get, $120 for a car radio for Kelly's high school graduation, $400 for Kelly's tuition, $90 for a storm door, $100 for a utility bill, and $150 for a retainer fee for her attorney.

The trial court awarded custody of Bradley to the wife and ordered the husband to pay $40 per week child support. The wife was granted possession of the marital home until six months after Bradley graduates from high school, i.e., December 1981, at which time the home must be sold and the net proceeds divided equally. While she has possession, the wife must continue to pay the mortgage, insurance, taxes and house maintenance. Until the home is sold, the husband is also to pay $50 per week

maintenance to the wife. Any arrearage in payment of temporary support due to the wife is to be deducted from the $5700 marital funds held by the wife, and the balance is to be divided equally between the parties. Attorney's fees will be paid by each party. The court also divided various items of personalty that were disputed and ordered the husband to pay certain marital debts and to maintain medical insurance on all three children.

The wife has appealed and argues that the judgment entered by the trial court was so unfair, and the property and financial assistance awarded to her were so insufficient, as to amount to an abuse of discretion. To support her position, she discusses each of the provisions of the order and the evidence relating to each, and asks this court to award her a more generous portion than did the trial court. Her particular arguments may be summarized as follows:

(1) Although the trial court made a specific finding that the wife was entitled to a greater portion of the personal property, and that the husband's income was greater than hers so that he had a better opportunity for future acquisition of assets and income, nevertheless the court divided the property equally and awarded her maintenance and possession of the family home for less than two years.

(2) The award of $50 per week maintenance and $40 per week child support were insufficient and forces her to charge her daughters room and board in order to live while the husband is enjoying a higher standard of living.

(3) She should have been awarded permanent maintenance in view of the disparity as to present income and future earning abilities.

(4) Some provision should have been made to require the husband to assist the two daughters attending college beyond medical insurance coverage and possession of the marital home for two years.

(5) She should have been awarded more than one-half the proceeds from the sale of the marital home.

(6) She should have been awarded more than one-half the personal property and marital funds.

(7) The husband should have been required to pay her attorney's fees.

We have carefully examined the record and find the wife's discussion of the facts to be somewhat misleading. The testimony concerning division of marital funds is contradictory and ambiguous, but there is evidence to support the contention of the husband that the wife in fact received more than one-half the joint savings accounts. Also, we find that the wife testified that she began to charge her employed daughters room and board because the husband stopped making his temporary support payments. The clear implication of her testimony is that she would not

need help from her daughters when she is receiving support from the husband. Finally we note that the son will have finished high school and one daughter will have finished her two year college program six months before the family home must be sold, and the oldest daughter will have only one semester of college remaining.

We must consider the appropriate standard of review in this case. We find persuasive the statement in *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129:

> "It is a well-established rule that a reviewing court is not justified in substituting its discretion for that of the trial court. [Citation.] In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court but rather did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed the bounds of reason and ignore recognized principles of law so that substantial injustice resulted."

Applying that test to the case at bar, we conclude that the trial court did not abuse its discretion. Admittedly the court was not overly generous with the wife, and made the most minimal provision for assistance with the college education of the two daughters and none at all for the son. However, we cannot say that under the circumstances of this case, the trial court was required as a matter of law to do more. The Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 513) provides, in part, as follows:

> "The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:
>
> (a) The financial resources of both parents.
>
> (b) The standard of living the child would have enjoyed had the marriage not been dissolved.
>
> (c) The financial resources of the child."

This provision has been interpreted as obligating the parents to extend support only during a child's minority or other dependency. (*Westerberg v. Stephens* (1979), 76 Ill. App. 3d 119, 394 N.E.2d 875; *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, 381 N.E.2d 744.) The expense of providing a college education for a child who is no longer a minor is not a burden that every parent is required to assume, regardless of circumstances, but rather is a matter for discretion of the trial court in

each case. We cannot say that the trial court acted unreasonably in this case. While the marital home will not be available as a residence for the son should he pursue a local college education, there was evidence indicating that he is not likely to seek a college education. Furthermore, section 513 of the Act would permit an application for financial assistance from the father for educational expenses in the event the need arises after the son is 18.

In summary, had we been the trial court, we might have made a more substantial provision for the wife and children, but that does not invalidate the award that was made here. We find the evidence sufficient to support the trial court's decision, and we believe the division of property and funds was a proper exercise of the discretion of the court.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

SCOTT, P. J., and ALLOY, J., concur.